IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| KIERSTON M. TAYLOR-NOVOTNY, ) | |
| ) | |
|     Plaintiff ) | |
| ) | 12 CV 2132 |
| v ) | |
| ) | |
| HEALTH ALLIANCE MEDICAL PLANS, ) | |
| ) | |
|     Defendant ) | |

**ORDER ON SUMMARY JUDGMENT MOTION**

This matter is before the Court on Defendant's Motion for Summary Judgment. The Motion and response have been fully briefed. Oral argument was held on October 4, 2013, and this order follows.

**BACKGROUND**

This is an employment discrimination case. Plaintiff was hired by Defendant in November 2005 as a Contract Specialist I, working in the Contracting and Provider Services ("CPS") Department. Cherie Fletcher ("Fletcher") was her supervisor, and Jeff Polk ("Polk") was the Director of the CPS Department. The policies in place at Health Alliance during the relevant portion of the Plaintiff s employment included an Attendance Policy as well as an Employee Discipline and Misconduct Policy. The job duties of a Contract Specialist I stayed fundamentally the same throughout Novotny's employment with Health Alliance. This job function consisted of managing the overall contracting process with medical providers, including document preparation, negotiation, follow-up, and documenting activities in the contract management system.

Plaintiff was originally diagnosed with multiple sclerosis in April 2007. She requested and was approved for FMLA leave beginning in 2008. In approximately February 2010, Plaintiff advised Defendant that she was having additional problems due to her multiple sclerosis and sought accommodations under the ADA. It is the reasonableness of those accommodations that are in dispute.

The Defendant argues that Plaintiff was an employee who failed to meet her employer's reasonable expectations and was not accountable for her work hours and essential job functions. The Plaintiff argues, although her record of performance was satisfactory, her supervisors developed and executed a plan to rid themselves of her almost immediately after

1

she began requesting accommodations for her medical condition. Her employment was terminated on July 30, 2010.

Plaintiff asserts six causes of action in her Complaint: (1) disparate treatment under the ADA; (2) failure to accommodate under the ADA; (3) retaliation under the ADA; (4) interference with FMLA rights; (5) race discrimination under Title VII; and (6) intentional infliction of emotional distress. Each claim will be addressed in turn.

## STANDARD OF REVIEW

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.,* 106 S.Ct. at 2553. This Court must then determine whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson* , 106 S.Ct. at 2511; *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

## SUMMARY OF FACTS RELEVANT TO ALL CLAIMS

### Defendant

The January 2007 performance evaluation sets forth the Plaintiff arriving late for work, taking non-work related appointments or missing work on 20 different dates. The evaluation cited the Plaintiff as "marginal" in punctuality and directed the Plaintiff to develop a plan to address this issue. In March of 2007, the Defendant attempted to help Plaintiff remedy her tardiness by changing her work schedule to delay her start time from 8:00 am to 8:30 am.

In October of 2007, a corrective action plan reported 29 instances of tardiness by the Plaintiff between March 28, 2007 and September 10, 2007. The corrective action again adjusted the Plaintiff's hours to start at 8:45 am instead of 8:30 am. The corrective action also indicated consequences if no improvement, including termination of employment.

2

January and June of 2008 reviews again highlighted punctuality problems and in December of 2008, the parties executed a Work from Home Agreement, which had the Plaintiff working from home on Monday, Wednesday and Thursday and at the office on Tuesday and Friday. A June 2009 evaluation again addressed her tardiness and on March 30, 2010, a written warning as to tardiness, that included the failure to notify or alert her supervisor was issued.

The May 2010 performance evaluation addressed the failure to meet certain goals that required the Plaintiff to contract with Hospital Based Providers. On May 21, 2010, a disciplinary action recited eight dates between April 13, 2010 and May 7, 2010, where Plaintiff was late and failed to notify her supervisor.

On July 30, 2010, the Defendant terminated the Plaintiff from employment citing, in part, three additional dates of inaccurate reporting of time, failure to complete negotiations on the six Hospital Based Contract providers, failing to report her contract negotiation progress to her supervisor and complaints from providers about Plaintiff's lack of responsiveness.

### Plaintiff

The Plaintiff disputes a number of the facts by arguing that the Defendant takes some of the evaluations out of context, that they omit some of the essential job functions and further argues that the termination was the first time any interim deadlines were mentioned. The Plaintiff adds that her termination was six months before the official deadline for completing her contract assignments and that there was no way to have completed the task.

In addition, the Plaintiff points out that the evaluations of 2007, January 2008, June 2008, 2009 and 2010 show the Plaintiff receiving an overall rating of average, achieves expectations and/or achieves requirements.

## ANALYSIS

### ADA Claims

The viability of the three ADA claims: (1) disparate treatment; (2) failure to accommodate; and (3) retaliation are dependent on whether Plaintiff could perform the essential functions of her job and was therefore a qualified individual. It is unclear whether Plaintiff is pursuing a retaliation claim under the FMLA, as well. If she is, it is analyzed under the same standard as the ADA retaliation claim.

### Disparate Treatment

Under the ADA , disability discrimination requires a showing that: (1) the plaintiff is disabled within the meaning of the ADA; (2) she was meeting her employer 's legitimate employment expectations; (3) she was subject to an adverse employment action; and (4) similarly situated employees were treated more favorably . *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007); *Rooney v. Koch Air, LLC*, 410 F.3d 376, 380-81 (7th Cir. 2005).

If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment decision. *Buie v. Quad/Graphics, Inc*., 366 F.3d 496, 503 (7th Cir. 2004). If this is done, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason was merely a pretext for intentional discrimination or retaliation. *Id.* Pretext can be shown by evidence suggesting that the proffered reason was factually baseless, was not the actual motivation, or was insufficient to motivate the employer's action. *Grube v. Lau Industries, Inc*., 257 F.3d 723, 729 (7th Cir. 2001).

For purposes of this Motion, Defendant assumes that Plaintiff is disabled, and there can be no dispute that she suffered the adverse employment action of termination. Defendant challenges her ability to satisfy the second prong of the test based on her inability to perform the essential functions of her job, some of which include, managing the overall contracting process with medical providers; document preparation; negotiation; and follow-up;

In addition, Defendant also argues that Plaintiff's repeated and unreported tardiness or absences failed to satisfy the essential function of attendance. Plaintiff ignores her disciplinary history and the requirement that she notify Fletcher of her absences or lateness, focusing instead solely on her overall job performance evaluations to dispute the claim that she was not meeting her employer's legitimate employment expectations and was able to perform the essential functions of her job.

As set out earlier in this order, the record is replete with instances of unexplained tardiness. More importantly, the record establishes an inability, or refusal, to report to her employer, or otherwise be accountable to her employer as to her tardiness even though she had repeatedly been warned to do so. Focusing solely on performance sidesteps the issue of an employer's legitimate expectations. The lack of accountability must be factored in.

Therefore, in spite of the overall job performance ratings as to the Plaintiff's ability to perform the essential functions of her job, and in spite of the Defendant's attempts to reasonably accommodate her, Plaintiff has failed to establish any facts to indicate that she was accountable to the Defendant, which is also an essential function of her employment. Because of this failure by the Plaintiff, the only reasonable conclusion to be drawn is that she wasn't accountable to her employer and her claim fails because she wasn't meeting her employer's legitimate employment expectations. Summary Judgment for the Defendant on this claim is therefore proper.

### Failure to Accommodate

The ADA also provides that an employer discriminates by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). However, a failure to accommodate claim arises only if the employee first satisfies the requirement of demonstrating that she suffers from a disability within the meaning of the statute. *Szmaj v. American Telephone & Telegraph Co.*, 291 F.3d 955, 956 (7th Cir. 2002) (holding that the ADA does not impose a duty of accommodation and that the duty of accommodation arises only if the employee is first

determined to have a disability within the meaning of the Act) . The Seventh Circuit has defined the prima facie showing required of an ADA plaintiff for failure to accommodate as follows: (1) she was disabled; (2) the [employer] was aware of her disability; and (3) she was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the employment position. *McPhaul v. Board of Commissioners of Madison County*, 226 F.3d 558, 566 (7th Cir. 2000), *citing Feldman v. American Memorial Life Ins. Co.,* 196 F.3d 783, 789 (7th Cir 1999).

For purposes of this Motion, Defendant concedes that Plaintiff was disabled and that Defendant was aware of her disability. However, under the terms of the statute, she must also be a qualified individual with a disability, which is further defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *McPhaul,* 226 F.3d at 563; *Jackson v. City of Chicago,* 414 F.3d 806, 811 (7th Cir. 2005). This determination must be made as of the time of the employment decision, and Plaintiff bears the burden of proof on this issue. *McPhaul* , 226 F.3d at 563, *citing Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1284 (7th Cir. 1996).

To determine whether a job function is essential, courts look to "the employer's judgment, written job descriptions, the amount of time spent on the function, and the experience of those who previously or currently hold the position." *Id.*, at 382, *citing Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001); 29 C.F.R. § 1630.2(n). If the employer has a written job description for the position, the description is considered evidence of the essential functions of the job, and the statute explicitly gives consideration to the employer's judgment regarding which functions of the job are essential. *Jackson,* 414 F.3d at 811.

Initially, the Court notes that the prior discussion regarding Plaintiff's repeated failure to notify or report her tardiness or absence, thereby failing to meet her employer's legitimate expectation that she would satisfy the essential function of accountability, is equally applicable to this claim. As such, Plaintiff has again failed to demonstrate that she was a qualified individual under the ADA, and her claim could be denied on this basis alone.

Alternatively, Defendant contends that in any event, it did not fail to provide any reasonable accommodation that was medically substantiated. Failure to accommodate a known disability can constitute discrimination under the ADA, unless doing so would impose an undue hardship on the employer. 42 U.S.C. §§ 12112(a), (b)(5)(A). Once an employer becomes aware of an employee's disability, it must make good faith efforts to reach a reasonable accommodation. *Beck v. University of Wisconsin Board of Regents,* 75 F.3d 1130, 1135 (7th Cir. 1996); *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998). That being said, employers are not required to provide the precise accommodation requested by an employee, particularly where the employee's request is not adequately substantiated by medical documentation; the employer is only required to provide an accommodation that is reasonable in terms of costs and benefits. *Mays v. Principi* , 301 F.3d 866, 871-72 (7th Cir. 2002); *Malabarba v. Chicago Tribune Co.,* 149 F.3d 690, 699 (7th Cir. 1998) (noting that an employee is not entitled to the best or employee-preferred accommodations, only an accommodation that is reasonable).

Plaintiff does not dispute that Defendant offered her some accommodations. Plaintiff was already working from home three days a week and reporting to the office only two days per week. After submitting a note from Dr. Hayden, she was offered the ability to reduce her work from the office to two half-days per week with the remaining time on those mornings covered by FMLA leave. Plaintiff rejected this offer. The parties met on May 1, 7, and 14, 2010 to discuss possible accommodation alternatives. It is undisputed that Defendant implemented several accommodations to help Plaintiff. Defendant then sent a letter to Dr. Hayden dated May 17, 2010, requesting additional input regarding accommodations. On July 13, 2010, Dr. Hayden responded with the suggestion that Plaintiff be offered a "flexible working schedule that would allow [her] to work efficiently when she was doing well but then allow rest periods when she is having a bad day."

Plaintiff argues that Defendant should have allowed her to use her "badge scan" report as evidence of her arrival times at work and allowed her to work from home all but two afternoons per week. The issue is whether these additional accommodations were reasonable and would have allowed her to perform her essential functions.

Defendant argues, and Plaintiff concedes, that the use of the badge scan to reflect Plaintiff's arrival time would not have allowed her to meet their requirements of providing advance notice of her lateness or supply the reason for the tardiness.

The Plaintiff was being accommodated and it is a fair inference to be drawn, from these facts, that the pattern of, or willingness to, accommodate ultimately led Plaintiff to believe that she could set her own schedule. Defining her own schedule is simply not a reasonable accommodation contemplated by law. In addition, there is no medical verification that addresses mental fatigue, or an inability to remember and document when she reported for work, which would appear to be the point of requesting the use of the badge scan report to document her arrival times. Nor does the use of the report address the issue of timely reporting tardiness or absences, as the issue in this case regarding accountability to an employer now hinges.

As such, Plaintiff has offered no evidence that either of these accommodations would have solved her problems. Where, as here, a plaintiff presents only her own self-serving testimony and fails to provide medical evidence to support the claim that the requested accommodation would have allowed her to perform the essential functions of her position, "that is just not sufficient for a reasonable jury to find that she is a qualified individual with a disability under the ADA." Id., at 564, *citing Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993); *Basith,* 241 F.3d at 930 (noting that plaintiff failed to provide evidence to substantiate his ADA claim, such as a report from his doctor that he could fully perform the essential functions with the requested accommodation). Summary judgment for the Defendant is proper as to failure to accommodate, as well.

6

## ADA Retaliation/FMLA Retaliation

Like discrimination, retaliation may be shown through direct or indirect evidence. To prove retaliation under the direct method, Plaintiff must show: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection between the two. *Benuzzi v. Bd. of Educ. of City of Chicago*, 647 F.3d 652, 664 (7th Cir. 2011); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). A causal connection requires evidence that the protected activity was "a substantial or motivating factor" in the decision to terminate her. *Hoppe v. Lewis Univ.,* 692 F.3d 833, 842 (7th Cir. 2012). Retaliation may also be shown through the indirect, burden-shifting method, which requires proof that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; (3) she was meeting her employer's legitimate expectations; and (4) similarly situated employees who did not engage in the protected activity suffered no adverse employment action. *Squibb v. Mem. Med. Ctr.,* 497 F.3d 775, 788 (7th Cir. 2007).

Once again, as set out earlier in this Order, meeting her employer's legitimate expectations is the threshold that Plaintiff is unable to establish, and since the Plaintiff cannot establish that she was meeting her employer's legitimate expectations, her claim necessarily fails under the indirect method. Her attempt to invoke the direct method also fails, as she summarily states only that "we demonstrated a causal link between the two – not just based on the timing, but also other evidence of animus and coercion." A conclusory statement does not apply the facts of her case to the relevant law, precluding Plaintiff from prevailing under the direct method, as well. Summary judgment for the Defendant is proper as to the retaliation claim.

## FMLA Interference Claim

The FMLA entitles eligible employees to 12 work weeks of unpaid leave during any 12 month period for serious health conditions. 29 U.S.C. § 2612(a)(l). The statute contains prescriptive protections that are expressed as substantive statutory rights to prohibit interference with, restraint of, or denial of the exercise or attempt to exercise an employee's right to take leave, and gives employees a cause of action if such interference occurs. 29 U.S.C. §§2615(a)(l) and 2617. The FMLA also provides a remedy in the event that an employee is discriminated against for having exercised his rights under the Act. 29 U.S.C. § 2615(a)(l) & (2).

Plaintiff claims that Defendant interfered with her rights under the FMLA. To maintain this cause of action, she must show: (1) she was eligible for protection under the FMLA; (2) Defendant was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) Defendant denied her leave to which she was entitled. *Ridings v. Riverside Medical Center*, 537 F.3d 755, 761 (7th Cir. 2008). Where an employee alleges that her employer deprived her of the FMLA's substantive guarantees, "the employee must demonstrate by a preponderance of the evidence only entitlement to the disputed leave . . . the intent of the employer is immaterial. " *King v. Preferred Technology Group*, 166 F.3d 887, 891 (7th Cir. 1999).

Plaintiff alleges that her termination was based in part on her FMLA leave issues. Defendant responds that there is nothing in the record that supports an allegation that it ever denied Plaintiff any requested FMLA leave, despite the fact that any notice she gave was untimely. Plaintiff had been taking FMLA leave without incident since 2008. In fact, Plaintiff admits that Defendant never denied her the opportunity to take FMLA leave in Fact #114. This admission is fatal to her claim. There is no evidence in the record to indicate that this claim is anything more than another form of the retaliation claim addressed above.

Moreover, the argument is perfunctory and undeveloped and therefore waived. *Finance Investment Co. v. Geberit AG,* 165 F.3d 526, 1998 WL 890372, at *1 (7th Cir. Dec. 23, 1998) *(*finding a perfunctory and undeveloped argument to be waived*); Indurante v. Local 705, International Brotherhood of Teamsters,* 160 F.3d 364, 366 (7th Cir. 1998)*; Kauthar SDN BHD v. Sternberg,* 149 F.3d 659, 668 (7th Cir. 1998), cert. den., 119 S.Ct. 890 (1999). Summary Judgment for the Defendant is proper on the FMLA claim.

### Racial Discrimination Claim

Title VII prohibits employers from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(l ); *Meritor Savings Bank. FSB v . Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 2404 (1986). Under Title VII, the plaintiff is required to establish that she has been the victim of intentional discrimination. *Mojica v. Gannett Co., Inc.,* 7 F.3d 552, 561 (7th Cir.1993). The plaintiff may present direct proof of discrimination, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775 (1989), or may rely on indirect evidence using the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973), burden shifting method of proof. Under that approach, the plaintiff bears the burden of presenting evidence sufficient to establish a prima facie case of discrimination. *Cullen v. Indiana University Board of Trustees,* 338 F.3d 693, 704 (7th Cir. 2003). The elements of a prima facie case include: 1) she was a member of a protected class; 2) she was performing her job satisfactorily or meeting his employer's legitimate performance expectations; 3) she was subjected to a materially adverse employment action; and 4) others outside of the protected class were treated more favorably. *McDonnell Douglas* , 411 U.S. at 802; *St. Mary 's Honor Center v. Hicks ,* 113 S.Ct. 2742, 2747 (1993).

If the plaintiff clears this initial hurdle, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the adverse employment action. *Id*. If the employer provides such a reason, the burden then shifts back to the plaintiff to produce evidence demonstrating that the employer 's stated reason is pretextual. *Id*.

As set out in the previous claims, meeting her employer's legitimate expectations is the threshold that Plaintiff is unable to establish, and since the Plaintiff cannot establish that she was meeting her employer's legitimate expectations, her claim of racial discrimination necessarily fails as well.[1]

---

[1] Plaintiff, an African American, concedes that she has no direct evidence and proceeds under the indirect method. She again identifies Fletcher and Welch as similarly situated Caucasian employees who were treated differently; Defendant disagrees that they were similarly situated, as

The record is devoid of any factual basis for this claim and Summary Judgment for the Defendant is proper.

### Intentional Infliction of Emotional Distress Claim

To state a claim for intentional infliction of emotional distress under Illinois common law, Plaintiff must allege that: (1) Defendant's conduct was extreme and outrageous; (2) Defendant intended to inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress; and (3) Defendant's conduct did

cause severe emotional distress. *See Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997); *Doe v. Calumet City*, 641 N.E.2d 498,506 (Ill. 1994); *McGrath v. Fahey*, 533 N.E 2d 806,809 (Ill. 1988).

Conduct is extreme and outrageous only if "the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency…" *Public Finance Corp. v. Davis*, 360 N.E. 2d 756,767 (Ill. 1976); *Kolegas v. Heftel Broad Corp*., 607 N.E. 2d 201, 211 (Ill. 1992). Moreover, "as to the third prong, an action may lie 'only where the distress inflicted is so severe that no reasonable man could be expected to endure it.'" *See McNamara v. Guinn*, 2000 WL1222128 at *3-4 (N.D. Ill. August 23, 2000), *citing McGrath*, 533 N.E.2d at 809.

The Plaintiff has not addressed this in her response to the Motion for Summary Judgment. As no genuine issue of fact exists, Summary Judgment for the Defendant is proper. Summary Judgment is therefore granted as a matter of law given Plaintiff's abandonment of this claim.

### CONCLUSION

For the reasons set forth above, Defendants Motion for Summary Judgment [31] is GRANTED. This matter is now terminated.

ENTERED this 30th day of October, 2013.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge

---

Fletcher was a supervisor and Welch reported to a different supervisor. Defendant notes that Polk, an African American, was the same person who hired and terminated Plaintiff, making it unlikely that racial animus played a role in her termination.